**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **LaMOUNT CORTEZ DORITY,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **No. CIV-15-30-D** |
| | ) | |
| **JANET DOWLING,** | ) | |
| | ) | |
| **Respondent.** | ) | |

## REPORT AND RECOMMENDATION

LaMount Dority, a state prisoner appearing *pro se*, filed a Petition for Writ of Habeas Corpus challenging his state court conviction pursuant to 28 U.S.C. § 2254, (ECF Nos. 1, 2), and United States District Judge Timothy D. DeGiusti referred the matter to the undersigned magistrate judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B). Ms. Dowling has filed a Response, (ECF No. 14), and Petitioner replied (ECF No. 24). For the reasons set forth below, it is recommended that the Court **DENY** the Petition.

## I.    RELEVANT BACKGROUND

As Petitioner relates, he purchased cocaine from Anthony Soloman, a "crack addict and narcotics trafficker" who was working with Enid Police in a "reverse sting." (ECF No. 2:2-4). Petitioner paid Mr. Soloman $200.00 and Mr. Soloman gave Petitioner approximately seven (7) grams of cocaine. (ECF No. 2:3-4). Police officers stationed near the "sting" immediately arrested Petitioner. (ECF No. 2:4).

In Garfield County District Court, Case No. CF-2011-678, the State charged Petitioner with trafficking in a controlled dangerous substance (cocaine). (ECF No. 1:1).

At trial, Petitioner argued police officers had "'sentenced entrapped'" him, and he had only intended to buy "a lower, non-trafficking, amount of cocaine from Soloman." (ECF No. 2:5). Mr. Soloman's testimony did not support Petitioner's theory, as he testified Petitioner had wanted cocaine to "distribute" and had agreed to buy "a quarter ounce of cocaine for $200.00." (Transcript of Jury Trial, Case No. CF-2011-678 (file-stamped Okla. Co. Jan. 30, 2013) Vol. I. at 182-83 (Trial TR Vol I)). Officers had recorded the initial telephone conversation between Petitioner and Mr. Soloman, wherein the parties allegedly discussed the purchase weight, but that audio was lost or destroyed before Petitioner's attorney could acquire it. (Trial TR Vol. I. 262-63). Over Petitioner's objection, the trial court allowed Enid Detective Justin Hodges to testify that he had listened to the audio recording and that Petitioner had not requested a lower-weight cocaine purchase. (Trial TR Vol. I. 267-68). Petitioner then unsuccessfully sought a mistrial based on the lost or destroyed evidence. (Trial TR Vol. II. 2-4).

The jury ultimately convicted Petitioner, and he appealed to the Oklahoma Court of Criminal Appeals (OCCA). That court affirmed the conviction. (ECF No. 14: Ex. 3).

## II.   PETITIONER'S HABEAS CLAIMS

Petitioner filed a Petition, but referred the Court to his Brief in Support for each claim. (ECF No. 1). That Brief in Support is his OCCA appellate brief. (ECF No. 2). Therein, Petitioner asserts four claims: (1) Ground One, the loss or destruction of the audio recording violated his rights to due process and the Confrontation Clause and the trial court therefore improperly denied his request for a mistrial; (2) Ground Two, the trial court failed to instruct the jury on a lesser included offense and on "sentence

2

entrapment"; (3) Ground Three, he was the victim of sentence entrapment; and (4) Ground Four, cumulative errors violated his constitutional rights. (ECF No. 2:7-44).[1]

## III.  STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs this Court's power to grant habeas corpus relief. "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Harrington v. Richter*, 562 U.S. 86, 98 (2011). When, as here, the state court has considered the claims on their merits, "this [C]ourt may grant a habeas petition only if the decision 'was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States' or 'resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Hanson v. Sherrod*, 797 F.3d 810, 824 (10th Cir. 2015) (citation omitted)). "It is the petitioner's burden to make this showing and it is a burden intentionally designed to be 'difficult to meet.'" *Owens v. Trammell*, 792 F.3d 1234, 1242 (10th Cir. 2015) (citation omitted). Indeed, this standard "reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice system, not a substitute for ordinary error correction through appeal." *Harrington*, 562 U.S. at 102-03.

---

[1] For clarity, citations to Petitioner's Brief in Support refer to the OCCA appellate brief's original pagination.

This Court first determines "whether the petitioner's claim is based on clearly established federal law, focusing exclusively on Supreme Court decisions." *Hanson*, 797 F.3d at 824. Clearly established federal law consists of Supreme Court holdings in cases where the facts are similar to the facts in the petitioner's case. *See House v. Hatch*, 527 F.3d 1010, 1016 (10th Cir. 2008). If clearly established federal law exists, this Court then considers whether the state court decision was contrary to or an unreasonable application of that clearly established federal law. *See Owens*, 792 F.3d at 1242.

"A state court's decision is 'contrary to' clearly established federal law 'if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Court has on a set of materially indistinguishable facts.'" *Id.* (citations omitted). Notably, "'[i]t is not enough that the state court decided an issue contrary to a lower federal court's conception of how the rule should be applied; the state court decision must be 'diametrically different' and 'mutually opposed' to the Supreme Court decision itself.'" *Id.* (citation omitted).

The "'unreasonable application' prong requires [the petitioner to prove] that the state court 'identified the correct governing legal principle from Supreme Court decisions but unreasonably applied that principle to the facts of the prisoner's case.'" *Id.* (citations and internal brackets omitted). On this point, "the relevant inquiry is not whether the state court's application of federal law was *incorrect*, but whether it was 'objectively unreasonable.'" *Id.* (citations omitted). So, to qualify for habeas relief on this prong, the petitioner must show "'there was no reasonable basis' for the state court's determination." *Id.* at 1242-43 (citation omitted). "In other words, 'so long as

fairminded jurists could disagree on the correctness of the state court's decision,' habeas relief is unavailable." *Id.* at 1243 (citation omitted); *see also Harrington*, 562 U.S. at 103 ("As a condition for obtaining federal habeas relief, . . . a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.").

Finally, a federal habeas court must "accept a state-court [factual] finding unless it was based on 'an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Davis v. Ayala*, 135 S. Ct. 2187, 2199 (2015) (citation omitted). In other words, when the state appellate court makes a factual finding, the Court presumes the determination to be correct; a petitioner can only rebut this presumption with clear and convincing evidence. *See id.* at 2199-2200; *see also* 28 U.S.C. § 2254(e)(1).

## IV.    PETITIONER'S FIRST GROUND FOR RELIEF

After thorough review, the undersigned finds Petitioner is not entitled to a writ of habeas corpus on his first ground for relief.

According to Petitioner, he was entitled to a mistrial because the State's loss or destruction of evidence denied him his constitutional rights to due process and confrontation. (ECF No. 2:7-28). Petitioner raised this claim on appeal, and the OCCA held:

> [Petitioner] has not shown that the loss or destruction of evidence was other than inadvertent; that the State committed a discovery violation warranting a mistrial; that testimony about the recording(s) denied him confrontation, or forced him to choose between his right to testify and the privilege against self-incrimination. *Arizona v. Youngblood*, 488 U.S. 51,

109 S.Ct. 333, 102 L.Ed.2d 281 (1988). As [Petitioner] has shown no abuse of discretion of the trial court's discretion in denying a mistrial, nor any plain error in the State's loss or destruction of evidence, no relief is required.

(ECF No. 14: Ex. 3:2).

## A.     Petitioner's State Law Claims

In large part, and presumably because he relied exclusively on his OCCA appellate brief, Petitioner alleges the loss and/or destruction of evidence and the trial court's refusal to grant him a mistrial violated Oklahoma statutes and the Oklahoma constitution. (ECF No. 2:8-28). However, those alleged violations would not entitle Petitioner to federal habeas relief. *See Davis v. Reynolds*, 890 F.2d 1105, 1109 n.3 (10th Cir. 1989) ("Alternative state claims, whether grounded in state statutes or the State Constitution, are not cognizable under 28 U.S.C. § 2254(a)." (citation omitted)). Accordingly, the undersigned focuses not on whether Petitioner was entitled to a mistrial under Oklahoma law, but on the alleged underlying federal constitutional violations.

## B.     Petitioner's Due Process Claims

Petitioner first alleges due process violations – namely the inability to present a meaningful defense, challenge Detective Hodges' credibility, and a forced choice between constitutional rights – through the State's failure to preserve the audio recording of a conversation between himself and Mr. Soloman. (ECF No. 2:16-30). Petitioner believes the audio recording would have established that he requested a "non-trafficking amount of cocaine [for $200.00], but was instead given a trafficking amount without his knowledge . . ." (ECF No. 2:18). The question for this Court is

whether the OCCA reasonably applied Supreme Court law when it rejected Petitioner's due process claims on direct appeal. The Court should answer in the affirmative.

### 1. Clearly Established Law

Under clearly established law, the federal constitution imposes a duty on the State to preserve evidence "that might be expected to play a significant role in the suspect's defense." *California v. Trombetta*, 467 U.S. 479, 488 (1984). To meet that standard, the "evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *Id.* at 489. Under *Trombetta*, Petitioner "bears the burden of showing that the missing evidence met that standard when it was lost." *United States v. Harry*, 816 F.3d 1268, 1276 (10th Cir. 2016).

If Petitioner fails to prove the evidence was exculpatory, clearly established law holds he can only establish a due process violation if he can "show bad faith on the part of the [State]." *Arizona v. Youngblood*, 488 U.S. 51, 58 (1988); *see also Harry*, 816 F.3d at 1278 ("Because the missing texts were not apparently exculpatory, the government violated Defendant's right to due process only if it lost or deliberately destroyed the texts in bad faith.").

Petitioner argues the missing audio evidence was exculpatory because the State had to prove he "knowingly possessed 5 or more grams of cocaine base" to convict him of trafficking, and the evidence would have answered the question: "Did [Petitioner] make a deal over the phone with Soloman to purchase a trafficking amount of cocaine as the State alleged, or did [Petitioner] request a non-trafficking amount of cocaine, but

was instead given a trafficking amount without his knowledge as he tried to show the jury?" (ECF No. 2:18).

The Court cannot know what Petitioner and Mr. Soloman discussed on the audio recording, but there is evidence: (1) Mr. Soloman believed Petitioner wanted to buy a "quarter ounce" of cocaine for $200.00 to "distribute"; (2) Petitioner immediately paid $200.00 for the cocaine when he entered Mr. Soloman's room; (3) in Enid, Oklahoma, $200.00 could buy at least 7 grams of cocaine, (4) an "eight ball" – or 3.5 grams of cocaine – would "look about half the size" as 7 grams; and (5) Mr. Soloman gave Petitioner 7 grams of cocaine and Petitioner did not question its size. (Trial TR Vol. I. 182-91, 235-36, 240-42, 263-64, 268 & State's Ex. 1 (video recording of Petitioner and Mr. Soloman's drug transaction)). With these facts, the undersigned finds Petitioner has not met his burden of showing the evidence was exculpatory; therefore, because the audio recording was only "potentially useful," the standard in *Youngblood* – not *Trombetta* – applies to his case. *See Harry*, 816 F.3d at 1278.

### 2. Analysis

Under *Youngblood*, Petitioner must show the evidence was lost or destroyed in bad faith. *See supra* 7. However, the OCCA made a factual determination that Petitioner "ha[d] not shown that the loss or destruction of evidence was other than inadvertent." (ECF No. 14: Ex. 3:2). This Court presumes the determination to be correct and Petitioner provides only speculation and conjecture to rebut it. (ECF No. 2:19-23). In sum, the record establishes that multiple "stings" occurred the night Petitioner was arrested and the same equipment used to record Petitioner's conversation with Mr. Soloman "was utilized by several detectives throughout the night." (Trial TR Vol. I.

262). Detective Hodges did not "know where the recordings went." (Trial TR Vol. I. 262). While unfortunate, these facts do not establish either the State or the Enid Police destroyed the audio recording in bad faith. Therefore, the Court should find the OCCA reasonably applied *Youngblood* and deny habeas relief on Petitioner's due process claims.

### C.       Petitioner's Confrontation Clause Claim

With liberal interpretation, Petitioner also claims that the state court violated the Confrontation Clause when it allowed Detective Hodges to testify about what he heard on the missing audio recording. (ECF No. 2:23-24). As noted above, *see supra* 5-6, the OCCA rejected the claim on the merits.

#### 1.       Clearly Established Law

In *Crawford v. Washington*, 541 U.S. 36 (2004), the Supreme Court held that testimonial hearsay violates a defendant's right to confront and cross-examine under the Confrontation Clause. *See id.* at 54.

#### 2.       Analysis

On cross-examination, Petitioner's attorney asked Detective Hodges about the missing audio tape, and the witness stated: "I listened to the conversation before I spoke to [Petitioner], and they discussed the purchase of crack cocaine. There was no discussion of marijuana." (Trial TR Vol. I. 262-63). Petitioner's attorney then questioned the officer about the size and price of an "eight-ball of crack cocaine base," and elicited Detective Hodges' testimony that an "eight ball" is "3.5 grams." (Trial TR Vol. I. 263-64). On re-direct, the trial court allowed the State to ask Detective Hodges whether

Petitioner ever mentioned an "eight ball of cocaine" on the audio recording, and Defendant Hodges said "[n]o." (Trial TR Vol. I. 267-68).

Under Oklahoma law, Detective Hodges' testimony about what Petitioner said (or did not say) on the audio tape was not hearsay. *See* Okla. Stat. tit. 12, § 2801(B)(1)(a) (noting a statement is not hearsay if it is offered against a party and is "the party's own statement"). So, the Confrontation Clause does not apply and the OCCA did not unreasonably apply federal law in rejecting this claim. *See, e.g., Amey v. Patton*, 606 F. App'x 924, 928 (10th Cir. 2015) (agreeing the witness's statement was not hearsay and holding "[t]he Confrontation Clause is not implicated by such a non-testimonial statement").

## V. PETITIONER'S SECOND GROUND FOR RELIEF

In his second ground for relief, Petitioner challenges the trial court's refusal to give jury instructions on: (1) "sentence entrapment;" and, (2) a lesser included offense. (ECF No. 2:29-39).

### A. Clearly Established Law

Generally, matters concerning jury instructions are considered state law questions and are not proper subjects for federal habeas review unless the error is "'so fundamentally unfair as to deprive petitioner of a fair trial and to due process of law.'" *Patton v. Mullin*, 425 F.3d 788, 807 (10th Cir. 2005) (citation omitted). "As a petitioner attacking a state court judgement based on a refusal to give a requested jury instruction, the burden on [Petitioner] is especially great." *Johnson v. Ward*, 78 F. App'x 100, 101 (10th Cir. 2003). This is because "'[a]n omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law.'" *Patton*, 425 F.3d at 807

(citation omitted). Further, "[t]he Supreme Court has never recognized a federal constitutional right to a lesser included offense instruction in non-capital cases." *Davis v. Roberts*, 579 F. App'x 662, 668 (10th Cir. 2014); *Hall v. Ezell*, 499 F. App'x 769, 771 (10th Cir. 2012) ("The Supreme Court has never recognized a federal constitutional right to a lesser included offense instruction in non-capital cases, and neither has this court." (citation and internal brackets omitted)).

### 1.    The Sentence Entrapment Instruction

Petitioner admits he bought crack cocaine but argues he intended to buy only 3.5 grams and was "entrapped" into taking 7 grams – a "trafficking" amount. Petitioner sought a jury instruction on sentence entrapment and the trial court denied his request. On direct appeal, the OCCA held:

> Sentence entrapment occurs when the defendant, intending to commit a lesser offense, is entrapped to commit a greater offense by government agents. We find no evidence here that [Petitioner] initially intended to commit the lesser offense of possession of cocaine base, or that he was persuaded or pressured by government agents to commit a greater offense that he was predisposed to commit.

(ECF No. 14: Ex. 3:3); *see also Watts v. State*, 194 P.3d 133, 138 (Okla. Crim. App. 2008) ("[W]e find sentence entrapment occurs only where 'the State causes a defendant initially predisposed to commit a lesser crime to commit a more serious offense.'").

Petitioner fails to establish fundamental unfairness in this instruction's absence. The evidence at trial established: (1) Petitioner wanted to "distribute" cocaine so Mr. Soloman offered to sell Petitioner "a quarter ounce of cocaine for $200.00," (2) a quarter ounce of cocaine is approximately 7 grams; (3) in Enid, Oklahoma, $200.00

11

could buy at least 7 grams of cocaine; (4) Detective Hodges did not hear Petitioner

offer to buy an "eight ball," or 3.5 ounces of cocaine; (5) Petitioner immediately paid

$200.00 for the cocaine when he entered Mr. Soloman's room;[2] (6) 3.5 grams of

cocaine would "look about half the size" as 7 grams; and (7) when Mr. Soloman gave

Petitioner 7 grams of cocaine, Petitioner did not question its size. (Trial TR Vol. I. 182-

91, 235-36, 240-42, 263-64, 268 & State's Ex. 1 (video recording of Petitioner and Mr.

Soloman's drug transaction)).

As the OCCA noted, this evidence does not support a finding that Enid Police

entrapped Petitioner. And, "[g]iven the lack of evidence in the record of either of the

elements of sentencing entrapment, this determination was not an 'unreasonable

determination of the facts in light of the evidence presented.'" *Leech v. Hines*, 151 F.

App'x 710, 712 (10th Cir. 2005) (citation omitted).

### 2.    The Lesser Included Offense Instruction

Petitioner also believes he was entitled to an instruction on possession of

cocaine; however, he lacks a federal constitutional right to a lesser included instruction.

Thus, the undersigned recommends the Court deny habeas relief on this claim. *See*

*Davis*, 579 F. App'x at 668 (noting the "court quickly dismissed [petitioner's] claim [that

---

[2]   After Petitioner placed the money on the table, Mr. Soloman asked if he knew anyone who might want "grapes," or "high-end marijuana." Petitioner then asked to buy $100.00 worth of cocaine and $100.00 of "grapes" but Mr. Soloman stated he couldn't break down the cocaine. Petitioner only laughed and did not object or complain about the quantity of cocaine. (Trial TR Vol. I. 185-186, 254 & State's Ex. 1 (video recording of Petitioner and Mr. Soloman's drug transaction)). Detective Hodges testified officers do not allow undercover informants to tamper with the drug quantities because "once you start breaking down crack cocaine, you're going to lose pieces of it all over everywhere. We didn't want to destroy the integrity of the amount of narcotics we had." (Trial TR Vol. I. 254-55).

the trial court failed to instruct on a lesser included offense]" and dismissing the appeal).

## VI.  PETITIONER'S THIRD GROUND FOR RELIEF

In Ground Three, Petitioner seeks habeas relief based on sentence entrapment. (ECF No. 2:40-43). However, "[t]he Supreme Court has long recognized that the defense of entrapment 'is not of a constitutional dimension.'" *Vega v. Suthers*, 195 F.3d 573, 583 (10th Cir. 1999) (citation omitted); *see also Leech v. Hines*, 151 F. App'x 710, 712 (10th Cir. 2005) (noting it is "settled law that defendants have no constitutional right to present the defense of entrapment"). So, for purposes of habeas relief, Petitioner cannot show he is in custody in violation of the federal constitution based on this claim. *See Vega*, 195 F.3d at 583-84 ("Following the Supreme Court's decisions . . ., a number of courts have concluded that claims relating to the denial of an entrapment defense, even when the defense is applicable as a matter of state law, are not cognizable in habeas because such claims are not of constitutional magnitude.").

## VII.  PETITIONER'S FOURTH GROUND FOR RELIEF

In his final argument, Petitioner alleges "the several serious errors" in the state court cumulatively "denied him a fair trial." (ECF No. 2:44). The OCCA disagreed, holding "[f]inding no error, there is no accumulation of error." (ECF No. 14: Ex. 3:3). The undersigned finds the OCCA's decision was a reasonable application of federal law.

### A.  Clearly Established Law

The Tenth Circuit has recognized a circuit split regarding whether a cumulative error analysis is clearly established federal law, and acknowledged its own lack of published precedent. *See Cole v. Trammell*, 755 F.3d 1142, 1177 (10th Cir. 2014).

However, the court has also noted "that Tenth Circuit 'precedent may very well signal where our court has come down on the issue – *viz.*, that cumulative-error analysis is clearly established law.'" *Cole*, 755 F.3d at 1177 n.14 (citation omitted). This Court need not resolve the issue, as Petitioner's cumulative error claim easily fails on the merits. *See Smith v. Duckworth*, 824 F.3d 1233, 1255 (10th Cir. 2016) (acknowledging respondent's argument that "no clearly established federal law recognizes cumulative error as a ground for habeas relief" but finding "because we can easily resolve these claims on the merits, it is not necessary for us to evaluate what deference may be owned to the OCCA under the circumstances").

"'A cumulative-error analysis aggregates all errors found to be harmless and analyzes whether their cumulative effect on the outcome of the trial is such that collectively they can no longer be determined to be harmless.'" *Smith*, 824 F.3d at 1255 (citation omitted). And, "[i]n the federal habeas context, the only otherwise harmless errors that can be aggregated are federal constitutional errors, and such will suffice to permit relief under [the] cumulative error doctrine only when the constitutional errors committed in the state court trial so fatally infected the trial that they violated the trial's fundamental fairness." *Littlejohn v. Trammell*, 704 F.3d 817, 868 (10th Cir. 2013) (citations and internal quotations omitted).

**B. Analysis**

In this case, there were no constitutional errors to accumulate. Therefore, the OCCA's decision is neither contrary to, nor an unreasonable application of Supreme Court law.

**VIII. RECOMMENDATION**

For the foregoing reasons, the Court should **DENY** the Petition for Writ of Habeas Corpus.

**IX. NOTICE OF RIGHT TO OBJECT**

The parties are advised of their right to file an objection to this Report and Recommendation with the court clerk by **November 14, 2016**, in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2). The parties are further advised that failure to make timely objection to this Report and Recommendation waives the right to appellate review of both factual and legal issues contained herein. *See Casanova v. Ulibarri*, 595 F.3d 1120, 1123 (10th Cir. 2010).

**X. STATUS OF REFERRAL**

This Report and Recommendation terminates the District Judge's referral in this matter.

ENTERED on October 27, 2016.

_____
SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE